UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DANIEL FRANK MORGAN,

                     Plaintiff,                  **OPINION & ORDER**

        -against-                         CV 19-5915 (AYS)

ANDREW SAUL,
Acting Commissioner of Social Security,

                     Defendant.
--------------------------------------------------------------X
**APPEARANCES:**

FUSCO, BRANDENSTEIN & RADA, P.C.
Attorneys for Plaintiff
BY: JOHN HEWSON, ESQ.
180 Froehlich Farm Blvd
Woodbury, New York 11797

THE UNITED STATES ATTORNEY'S OFFICE, E.D.N.Y.
Attorneys for Defendant
BY: PRASHANT TAMASKAR, AUSA
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

**SHIELDS, Magistrate Judge:**

      Plaintiff-Appellant, Daniel Frank Morgan ("Appellant"), a former oil burner serviceman

and tank truck driver, commenced this action pursuant to 42 U.S.C § 405(g) for the review of the

final decision of Andrew Saul, the Acting Commissioner of the Social Security Administration

(the "Commissioner"), finding that Appellant is not entitled to disability insurance benefits under

Title II of the Social Security Act (the "Act").

      Presently before the Court are cross-motions for judgment on the pleadings by the parties.

See Docket Entry ("DE") [8] [14]. For the reasons set forth below, the Commissioner's cross-

motion for judgment on the pleadings is granted, Appellant's motion for judgment on the pleadings is denied, and the ALJ's October 23, 2018 decision is affirmed.

BACKGROUND

The facts of this case are drawn principally from Appellant's Complaint ("Complaint") and the Administrative Record ("AR.").

I.      Appellant's Background and Alleged Impairments

        A.      Medical History Prior to the Date of Last Insured (March 31, 2016)

Appellant was born on August 14, 1964 and was 52 years old during the alleged onset of his disability. AR. 171. Appellant graduated from high school around 1982 and had primarily worked as an oil burner serviceman. AR. 206-213. Appellant was involved in a motor vehicle accident on November 1, 2014 after he lost consciousness presumably due to syncope. *See* AR. 262-63. Dr. Anthony Garcia instructed Appellant to not drive for six months and undergo an evaluation for syncope, sleep disorder, and narcolepsy during a consultation at Plainview Hospital after Appellant's accident. Id. A Nassau County AMT created a patient care report at the scene of the accident on November 1, 2014, which revealed that Appellant was ambulatory at the scene of the motor vehicle accident and that he was not feeling well that day and must have passed out prior to impact. AR 271-272.

On November 3, 2014, Appellant visited Paul Lerner, M.D. AR. 462. Dr. Lerner found no new focal neurological deficits, normal electroencephalogram (EEG), and negative head and maxillofacial computerized tomography (CT) scan from the hospital after the accident. AR. 462. Dr. Lerner assessed "[s]yncope/near syncope events that are suspicious for seizures …" Id. Appellant subsequently underwent a continuous ambulatory EEG study from November 18 to November 20, 2014. AR. 461. Dr. Schaul, the physician who interpreted the results, noted that

2

there were several suspicious waves that "raise[d] the possibility of an epileptic process." AR. 461. Although Dr. Schaul recommended a follow-up study, Appellant did not follow-up for any seizure- or syncope-related activity during this period. AR. 461; 530-534. The treatment Appellant otherwise received during the relevant period focused primarily on his cervical spine impairment. Id.

Salvatore Corso, M.D., Appellant's treating physician, conducted an initial evaluation after the accident on November 21, 2014. Appellant had reported significant pain in his cervical spine. AR. 289-307. After a physical examination, Dr. Corso reported symptoms increasing on resisted extension and axial compression and a positive right foraminal compression test. AR. 304. Furthermore, Dr. Corso observed muscle spasm at the right cervical and trapezius muscles, increased symptoms on resisted extension and axial compression, decreased symptoms when raising the right arm, and positive right foraminal compression testing. AR. 304. There was also tenderness of the right cervical, levator, and trapezius muscles, as well as "some inconsistent sensory changes … in the right arm but no profound motor weakness or wasting." Id. Dr. Corso subsequently diagnosed Appellant as suffering from cervical radiculitis and status post prior cervical fusion from a prior accident that required surgery. AR. 303-04. Dr. Corso also ordered an MRI, recommended non-steroidal anti-inflammatory treatment, and prescribed physical and occupational therapy. AR. 305. While Dr. Corso initially noted that physical therapy had improved Appellant's condition, he determined that another cervical spine surgery may be necessary before later prescribing more physical and occupational therapy. AR. 291-92.

Dr. Corso completed a Doctor's Progress Report on July 6, 2015 on behalf of the State of New York Workers' Compensation Board, which listed diagnoses of cervical radiculitis, cervical spine stenosis, and cervical spine disc degeneration. AR. 306-07. Dr. Corso indicated that

Appellant's complaints were consistent with his injury history and Dr. Corso's objective findings. AR. 306-07. Dr. Corso recommended physical and occupational therapy three times per week for six weeks. Id. He further opined that Appellant had a 50% temporary impairment, checked a box indicating that Appellant was currently working, and did not complete portions of the report asking whether Appellant could return to work and if he had any limitations in returning to work. AR. 307.

John Leppard, M.D. conducted an independent orthopedic examination Appellant in conjunction with Appellant's Workers' Compensation claim on May 27, 2015. AR. 340-43. Appellant stated that he suffered from neck pain when sitting or standing for more than 30 minutes. AR. 340. Dr. Leppard's examination found limited range of cervical motion in all directions. AR. 341. In particular, Appellant forwardly flexed to 25 degrees and extended to 20 degrees (45 degrees is normal for both); and rotated bilaterally to 45 degrees (60 degrees is normal for both). AR. 341. There was also diffuse cervical spinal tenderness but no profound motor weakness, no neurological depravation, negative straight leg raise test, equal and symmetrical deep tendon reflexes throughout, 5/5 motor strength, and negative Hoffman's test. AR. 341. Dr. Leppard subsequently diagnosed Appellant with cervical radiculitis status-post prior surgery and noted that his symptoms were "an exacerbation of his preexisting underlying conditions." AR. 342. Dr. Leppard opined that Appellant "has a mild partial disability. [He] can return to all normal activities including those of employment with only modest self imposed restrictions." AR. 342. Dr. Leppard consequently determined that "[n]o further care or treatment is necessary or indicated at this time nor has request for additional treatment been requested." AR. 342.

B.      Medical History After the Date Last Insured (March 31, 2016)

4

On September 6, 2016, Rita Figueroa, M.D. conducted a consultative orthopedic examination of Appellant on behalf of the Social Security Administration. AR. 492-495. At the time of the evaluation, Appellant reported a prior motor vehicle accident with cervical fracture in September of 2007 and a second accident in 2011 with subsequent memory problems, name recognition problems, and problems following directions. AR. 492. Appellant complained that his neck and shoulders felt weak, and his head would start dropping when he became tired. AR. 492. In addition, he reported difficulty walking and lifting more than 10 pounds, and he avoided running, skipping, and bending. Id. Appellant also indicated that he could not cook because of a lack of concentration, cleaned three to four times per week, could do laundry and shop only without heavy lifting, could not perform childcare, and could independently take care of his personal needs. AR. 493. Dr. Figueora observed that Appellant held his shoulder and neck during the whole examination but otherwise appeared to be in no acute distress, had a normal gait, could walk on his heels and toes without difficulty, could squat fully, and needed no help changing for the examination, getting on and off the examination table, or rising from a chair. Id. Appellant had intact hand and finger dexterity, 5/5 grip strength bilaterally, and could zip, button, and tie. AR. 494. He had limited ranges of cervical spinal motion bilaterally but with no cervical or paracervical pain or spasm and no trigger points. AR. 494. Dr. Figueora reported no other abnormalities during the physical examination other than Appellant's left hand not sensing a pinprick. Id.

Robert Moriarty, M.D., an orthopedist who had seen Appellant on three occasions, completed a medical source statement on August 27, 2018. AR. 596-99. Dr. Moriarty diagnosed Appellant with cervicalgia and cervical cord myelomalacia. AR. 596. He also reported symptoms of limited range of motion, severe cervical pain that is constant from the neck to the shoulders and upper back, and difficulty sleeping. Id. In particular, Dr. Moriarty opined that Appellant is capable

of only lifting up to five pounds occasionally, can rarely use his hands for fine or gross manipulation, rarely use his arms for reaching in any direction, and would need to take frequent unscheduled breaks, frequently shift positions, and occasionally need to lay down to rest during the workday. AR. 598.  He stated that Appellant would be off-task 25% or more of the workday, miss five or more days of work per month due to pain, and could only sit or stand for a total of two hours in a workday. AR 598. Dr. Moriarty also noted clinical findings of a stiff neck, hyperreflexia, negative clonus, kyphosis, and significantly reduced range of motion in the neck. AR. 596. He determined that Appellant's pain was severe and constant from the neck to the shoulders and upper back. AR. 596.  Dr. Moriarty indicated that Appellant had been disabled since his first visit at his office on May 23, 2018. AR. 597. He found that Appellant's impairments had lasted or were expected to last at least 12 months. Id. Dr. Moriarty consequently opined that Appellant had no ability to work and could not perform postural movements, including bending, fine and gross manipulation, and reaching. AR. 598.

II.     Non-Medical Evidence

        A.     August 7, 2016 Function Report

        Appellant completed a function report on August 7, 2016 as part of his application for disability benefits. AR. 217-225. He mentioned that a typical day consisted of taking his medication in the morning, watching television or using the computer, and going to bed around 10:00pm. AR. 218. Appellant noted that his neck hurt most of the time and that he only slept a few hours at a time. AR. 219. He reported changing clothes, showering, and eating less. Id. He also indicated that he primarily made only hot dogs and eggs three times per week since he did not cook much because he had never learned to do so. AR. 220. Appellant further reported that he made his bed and did laundry but had to either make multiple trips or ask his brother for help. AR.

6

220; 223. He stated that he could not bend to lift any weight without pain and neck fatigue caused him to have problems standing, walking, sitting, and climbing stairs. AR. 221. For instance, he noted that he could walk 100 yards with pain before having to rest for three-to-four minutes to massage his neck. AR. 224. Appellant also stated that he had trouble reaching and his hand strength had greatly diminished. AR. 221.

Appellant stated that he watched his friends go fishing three to four times per week, watched television, and played chess on his computer. AR. 222. He reported going to meetings, engaging in computer dating on a nightly basis. AR. 222-23. He mentioned that he travelled by walking, driving a car, or riding in a car. AR. 223. Appellant further noted that he shopped for groceries and household items approximately three times per week for an hour and went to a convenience store twice a week. Id.

B.      Hearing Testimony

Appellant testified at his administrative hearing on September 7, 2018. With respect to his employment situation, he stated that he had last worked as an oil burner serviceman but has not worked since November 1, 2014 due to his neck and back conditions. AR. 34-36. He further indicated that he had his driver's license withheld for a period of time because of his seizures and neck issues. AR 36. Although he has received his license back since then, Appellant testified that he only drives for short distances near his house. AR. 39. Appellant also stated that he tried to work part time in October, November, and December of 2015, but he was let go because he "couldn't keep up with the other guys." AR. 55.

Appellant testified that he went down to the dock "once in a while" to visit his friends and fish. AR. 37. He also mentioned that he tried to help with activities like washing his own dishes and preparing meals but could not do anything involving heavy lifting. AR. 37. For example, he

7

indicated that he does not do his own laundry because he cannot carry it downstairs. AR. 39. He also testified that he could not pick up or carry anything low or over his head. AR. 45. Further, Appellant stated that he has problems with cramps and shaking in his hands such as dropping things around the house and having difficulty using his keys on occasion. AR. 45-46. He also testified that he suffers from exacerbated symptomatology with changes in the weather. AR. 50. Appellant also stated that he did not believe he could lift his old toolbox if he were still working as an oil burner serviceman. AR. 47-48. He estimated that he could sit for approximately 30 minutes to an hour before he had to lie down and stand for 30 minutes to an hour before he had to sit or lie down. AR. 51. Appellant, however, did not need assistance getting dressed and went out to eat sometimes with his girlfriend. AR. 39-40; 52. During testimony, Appellant exhibited limited range of motion with his neck and indicated that it is difficult for him to hold his head in one position when he sits in a chair without a high back or head rest. AR. 49. Appellant testified that he has been prescribed Lamictal to alleviate his seizures and Trazodone as a mild painkiller and relaxant, which causes drowsiness but helps him sleep. AR. 43; 50.

Matthew Lampley, a vocational expert, also testified at the hearing on September 7, 2018. AR. 61. Lampley categorized Appellant's past relevant work as a tank truck driver and an oil burner serviceman at the medium and heavy exertional levels respectively under his assessment of the Dictionary of Occupational Titles and Appellant's testimony of his work duties. AR. 62. Lampley testified that an individual with Appellant's vocational profile, which accounted for his age, education, and work experience, could perform light work, but could not climb ladders or work in hazardous environments. AR. 62-63. Such a worker, however, could use hands and arms for frequent handling and reaching activities, could occasionally climbs stairs, balance, stoop, kneel, crouch, and crawl. Id. Lampley testified that such an individual could not perform

8

Appellant's past work, but could perform unskilled, sedentary exertion level jobs such as being a sorter, routing clerk, and collator-operator. AR. 63-64. When posed with a hypothetical scenario in which a person would only be able to occasionally use his or her hands and arms for reaching, feeling, and handling, however, Lampley indicated that these jobs would be eliminated from the analysis. AR. 65-66. Lampley indicated that there would be no transferrable skills acquired as an oil burner or a tank truck driver that could be utilized for these jobs. He testified that if such a worker was off task more than 10% of the time or absent once or more per month, there would be no suitable jobs in the national economy. AR. 64-65.

## PROCEDURAL HISTORY

### I.    Application and Review

Appellant filed a Title II application for Social Security Disability Insurance Benefits on March 22, 2016, alleging disability beginning on November 1, 2014. AR 10; 171-72.

On September 19, 2016, the Social Security Administration ("SSA") initially denied Appellant's application. AR. 10. Appellant thereafter filed a written request for a hearing before an administrative law judge on October 11, 2016. Id.

On September 7, 2018, Appellant, represented by John Hewson of Fusco, Brandenstein & Rada, P.C., appeared before Administrative Law Judge Gregory M. Hamel ("ALJ Hamel"). AR. 26-68. Matthew Lampley, the impartial vocational expert, also testified at the hearing. Id.

On October 18, 2018, ALJ Hamel issued his decision, holding that Appellant did not meet the requirements to be found disabled under 42 U.S.C. § 423 et seq. AR. 20.

On October 23, 2018, Appellant filed a request for review of ALJ Hamel's decision. AR. 1-3. On August 20, 201, the Appeals Council denied the request. Id. On October 20, 2019,

Appellant commenced this action pursuant to 42 U.S.C. § 405(g) for review of the October 18, 2018 ALJ decision. See generally Compl.

DISCUSSION

I.     Legal Principles

    A.     The Standard of Review

"A district court may set aside a Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)).

Thus, judicial review of the Commissioner's final decision requires "two levels of inquiry." Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The district court "first reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); see also Arzu v. Colvin, 2015 WL 1475136, at *8 (S.D.N.Y. Apr. 1, 2015) ("First, the court must decide whether the Commissioner applied the correct legal standard.") (citing Apfel, 167 F.3d at 773); see also Calvello v. Barnhart, 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008), report and recommendation adopted, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008) (same).

Next, the Court examines the administrative record to "'determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision[.]'" Burgess, 537 F.3d at 128 (quoting Shaw, 221 F.3d at 131). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004)). However, the

Court may not properly "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).

"[Substantial evidence] is still a very deferential standard of review — even more so than the 'clearly erroneous' standard.'" Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012). For example, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). Moreover, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

B.    Legal Principles Applicable to Disability Determinations

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct a five-step inquiry. First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity. 20 C.F.R. §

404.1520(a)(4)(i). Second, if the claimant is not gainfully engaged in any activity, the Commissioner must determine whether the claimant has a "severe impairment" that significantly limits the claimant's ability to do basic work activities. Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe." 20 C.F.R. § 404.1520(c)(a)(4)(ii). Third, if the claimant has a severe impairment, the Commissioner must determine whether the impairment is one of those included in the listings of the regulations. If it is, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits. 20 C.F.R. § 404.1520(c)(a)(4)(iii).

After step three, but before step four, the Commissioner must determine the claimant's RFC; that is, the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments. 20 C.F.R. § 404.1520(e). A claimant's RFC is "the most the claimant can still do despite the claimant's limitations." 20 C.F.R. § 404.1545(a). At step four, if the claimant does not meet the criteria for being presumed disabled, the Commissioner next must determine whether the claimant possesses the RFC to perform the claimant's past work. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth and finally, if the claimant is not capable of performing prior work, the Commissioner must determine whether the claimant is capable of performing other work for which there a significant number of available jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, the claimant will be found not disabled. Id.

The claimant bears the burden of proof at the first four steps. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). Once the claimant has established their inability to perform their past work, however, the Commissioner has the burden of showing that "there is other gainful work in

the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 642 (2d Cir. 1983)).

II.    The October 18, 2018 Decision

In finding that Appellant was not disabled under the Act, ALJ Hamel correctly applied the five-step framework.

At step 1, ALJ Hamel found that Appellant did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2014 through his date last insured of March 31, 2016. AR. 12. ALJ Hamel held that Appellant's work activity as a part-time oil burner serviceman for Apple Home Heating Corp. qualified as an unsuccessful work attempt lasting three months or less under 20 CFR § 404.1571(c)(3) and 416.974(c)(3). Id.

At step 2, ALJ Hamel determined that Appellant's cervical disc disease with radiculitis and seizure disorder qualified as severe impairments pursuant to 20 CFR § 404.1520(c). AR. 13. ALJ Hamel found that the record reflected that these impairments cause more than slight functional limitations that interfere with Appellant's ability to perform basic work-related activities. Id.

At step 3, ALJ Hamel found that Appellant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the per se disabling conditions enumerated in 20 CFR Pt. 404, Subpart P, App. 1 of the Act's regulations. ALJ Hamel concluded that despite Appellant's disorders of the spine, he does not have ongoing nerve root compression characterized by motor, sensory or reflex loss. Further, despite Appellant's epilepsy, he does not have generalized tonic-clonic seizures or dyscognitive seizures.

At step 4, after careful consideration of the entire record, ALJ Hamel found that Appellant had the residual functional capacity ("RFC") to perform light work, as set forth in 20 CFR

13

404.1567(b), except that he cannot climb ladders or work in hazardous environments or around dangerous machinery; is able to do frequent but not constant handling, fingering, and reaching; can occasionally climb stairs; and is able to only occasionally balance, stoop, kneel, crouch, and crawl. AR. 14. ALJ Hamel concluded that although Appellant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Appellant's statements concerning the intensity, persistence, and limiting effects of such symptoms were not entirely consistent with the medical evidence prior to the date last insured and other evidence in the record. AR. 15.

Finally, at step 5, abiding the testimony of Matthew Lampley, ALJ Hamel determined that Appellant was unable to perform any past relevant work through the date last insured. AR. 18. ALJ Hamel, however, also found that "considering [Appellant's] age, education, work experience, and [RFC]," Appellant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. AR. 19-20. For instance, the Matthew Lampley testified that 51,000 sorter positions, 47,000 routing clerk positions, and 21,000 collator operator positions were available nationally. AR. 19.

These findings compelled the conclusion that Appellant was not disabled under the Act from the alleged onset date of November 1, 2014 through March 31, 2016, the date last insured. AR. 20; see generally 20 C.F.R. § 404.1520(g).

A.    Appellant's Claims

On appeal, Appellant argues that ALJ Hamel's conclusion that Appellant had the RFC to perform light work as defined in 20 CFR 404.1567(b) was based purely on the judge's own assessment of the record as a whole and is not supported by any of the conclusions of the medical records in the record as a whole. Appellant argues that ALJ Hamel failed to note which medical

doctors or records he afforded significant weight to when determining his RFC of light work within the national economy. Pl's Mem. of Law at 17. Specifically, Appellant contends that ALJ Hamel failed to assess the positive findings noted in her May 29, 2018 MRI of the cervical spine. Pl's Mem. of Law at 18. Although the MRI took place after the date last insured, Appellant argues that ALJ Hamel should have nonetheless incorporated these findings to his RFC analysis since they are "consistent with the significant prior history of cervical injuries and cervical surgery suffered by [Appellant]." Id. Moreover, Appellant asserts that "because a medical record may be produced subsequent to the date last injured [sic], that fact does not render the contents therein to be inconsequential to the analysis of a period prior to the date last injured [sic]." Pl's Mem. of Law at 19.

Appellant also argues that ALJ Hamel's decision fails to substantiate that any weight was given to the fact that Appellant has a long treatment history with Dr. Corso, a treating relationship with Dr. Moriarty, and a long history of prior neck and cervical conditions that should have been afforded weight. Pl's Mem. of Law at 18-19. Appellant claims that ALJ Hamel fails to substantiate on what basis he made his decision, considering that ALJ Hamel accorded little to some weight on the reports from these physicians because the findings were either too vague, conclusory, or, in the case of Dr. Moriarty's report, provided after Appellant's date last insured. Pl's Mem. of Law at 19. In particular, Appellant argues that ALJ Hamel failed to cite to any medical opinions that support his RFC determination and the testimony of Appellant regarding her physical restrictions align more with the findings of Dr. Moriarty than those in the Decision. Pl's Mem. of Law at 20. Appellant claims that ALJ Hamel erred in applying aspects of Appellant's testimony to his RFC analysis since the testimony he used "ignores the generalized testimony of [Appellant] entirely and a credible representation of his activities of daily living form." Id. Thus, according to Appellant,

ALJ Hamel selectively cited to aspects of both the medical reports and Appellant's testimony in the record for his RFC determination, which misrepresents Appellant's complaints of physical restrictions and the lifestyle changes he has made for daily activities such as driving, shopping, doing dishes and laundry, using the computer, fishing, and socializing with friends and family. Pl's Mem. of Law at 20-23.

Appellant also contends that ALJ Hamel had a duty to solicit additional testimony or further develop the administrative record since the medical reports and testimony featured conflicting information regarding Appellant's condition. Pl's Mem. of Law at 23-24. For instance, Appellant notes that ALJ Hamel should have taken affirmative steps to rectify the record by obtaining additional consultative examinations or contacting Dr. Figueroa for a complete report since the consultative examination performed on behalf of the Social Security Administration appeared to be incomplete because it did not include sections on a diagnosis and a medical source statement. Id. Appellant further argues that ALJ Hamel abused his discretion by neglecting the testimony of the vocational expert who stated that no work would exist in the national economy when posed with the hypothetical scenario of an individual, such as Appellant, with the ability to perform light work but be off task for any amount of time grater than 10% and miss more than one day of work per month. Pl's Mem. of Law at 24.

B. The Commissioner's Counterclaims

In response, the Commissioner counters each of Appellant's assertions. The Commissioner asserts that substantial evidence supports ALJ Hamel's RFC determination and Appellant's contention misapplies the legal standard. Specifically, the Commissioner cites to the medical evidence and opinions from Dr. Leppard, Dr. Corso, and Dr. Figueroa to demonstrate the basis of ALJ Hamel's RFC determination. The Comm'r's Reply Mem. of Law at 14. Further, the

Commissioner refers to Appellant's daily activities that were considered by ALJ Hamel as additional evidence suggesting Appellant's ability to perform the requirements of light work with restrictions described in the Decision. The Comm'r's Reply Mem. of Law at 15. The Commissioner counters Appellant's argument that ALJ Hamel failed to note which medical doctors or records he afforded any significant weight to by arguing that there is no such requirement for the ALJ to do so. The Comm'r's Reply Mem. of Law at 17-18. Rather, the ALJ need only to weight he medical opinions and consider the evidence in the record, which he did for the relevant period. Id.

In response to Appellant's argument that ALJ Hamel failed to assess nay of the positive findings noted in the cervical MRI dated May 29, 2018, the Commissioner argues that such findings are too far removed to provide reliable insight into Appellant's RFC and are of little value since the MRI was taken two years after the relevant period. The Comm'r's Reply Mem. of Law at 18. Further, the Commissioner points out that ALJ Hamel did not have to consider the MRI anyway because he had acknowledged that Appellant's cervical disc disease with radiculitis created a significant impairment. Id.

In response to Appellant's claim that ALJ Hamel should have taken affirmative steps to clarify medical opinions from physicians like Dr. Figueroa, the Commissioner asserts that such opinions were, in fact, consistent with the record as a whole and ALJ Hamel was under no obligation to seek additional information since he already had a complete medical history of Appellant. The Comm'r's Reply Mem. of Law at 20.

The Commissioner lastly counters Appellant's argument that ALJ Hamel selectively ignored aspects of the vocational expert's testimony. Specifically, Appellant claimed that ALJ Hamel overlooked the vocational expert's testimony that the occupational base would be eroded

if a hypothetical individual with the same vocational profile as Appellant could only occasionally use his hands for fine motor activity and was off task for greater than 10% of the workday or would miss one day of work per month. The Comm'r's Reply Mem. of Law at 20-21. The Commissioner contends that Appellant had not reached his burden of proof to warrant a more restrictive RFC and medical opinions supported ALJ Hamel's findings regarding Appellant ability to use his hands. The Comm'r's Reply Mem. of Law at 21.

For the reasons set forth in the analysis below, this Court rejects all of Appellant's arguments.

<u>ANALYSIS</u>

This Court may not determine *de novo* the severity of a claimant's impairments, but instead must uphold the ALJ's determination, as long as it was based on substantial evidence in the Record, even where contrary evidence exists. <u>Del Carmen Rojas v. Berryhill</u>, 17cv6788 (GBD) (DF), 2019 WL 2453342, at *23 (S.D.N.Y. Jan. 30, 2019); <u>see also</u> <u>Pereira v. Astrue</u>, 279 F.R.D. 201, 205 (E.D.N.Y.) (noting that a district court reviewing a denial of Social Security disability benefits on appeal does not decide the case *de novo*). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive." <u>Id</u>. (citing 42 U.S.C. 405(g)). The Court must decide "whether substantial evidence supports the ALJ's decision" instead of whether "there is substantial evidence supporting the [plaintiff's] view." <u>Bonet v. Colvin</u>, 523 F.App'x 58, 59 (2d Cir. 2013). Where the court finds that substantial evidence exists to support the Commissioner's determination, the decision will be upheld, even if contrary evidence exists." <u>Mackey v. Barnhart</u>, 306 F.Supp.2d 337, 340 (E.D.N.Y. 2004); <u>see also</u> <u>DeChririco v. Callahan</u>, 134 F.3d 1177, 1182 (2d Cir. 1998) (affirming the district court's decision when there was substantial evidence for both

sides). This deferential standard applies "not only to factual determinations, but also to inferences and conclusions drawn from such facts." Muro, 412 F.Supp.3d at 261 (internal quotes omitted).

This District Court has affirmed prior ALJs' findings on similar grounds as Appellant's condition. See, e.g., Dees v. Comm'r of Soc. Sec., 413 F.Supp.3d 158, 160 (E.D.N.Y. 2018) (holding that substantial evidence supported the ALJ's finding that the claimant, who partly suffered from cervical disc disease, had an RFC to perform sedentary work and the claimant's statements concerning intensity, persistence, and the limiting effects of her symptoms were not entirely credible); Zaharopoulos v. Saul, 516 F.Supp.3d 211, 213 (E.D.N.Y. 2021) (holding that the ALJ's finding that the claimant was not disabled based on an RFC to perform light work with certain limitations despite severe impairments including cervical disc disease was reasonable and supported by substantial evidence, even though there was no specific medical opinion that fully mirrored the ALJ's RFC determination). For the foregoing reasons, this Court affirms ALJ Hamel's RFC determination as supported by substantial evidence in favor of the Commissioner.

1. Substantial Evidence in the Administrative Record as a Whole Supports ALJ Hamel's RFC Determination

A district court need not require an ALJ to have "mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). The court may instead "look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982). A remand for further findings or a clearer explanation is only warranted when the reviewing court "would be unable to fathom the ALJ's rationale in relation to evidence in the record." Id.

ALJ Hamel utilized the administrative record as a whole, including treating physicians' reports, treatment notes and longitudinal treatment records, and Appellant's own testimony to develop his RFC. A reviewing court may affirm an ALJ's RFC determination even if the ALJ did not specify the exact physicians or records to justify his or her findings. See Zacharopoulos, 516 F.Supp.3d at 229 (holding that the ALJ formulated an RFC for the plaintiff that was consistent with the administrative record even though there was no specific medical opinion that fully mirrored the ALJ's RFC determination). Although Appellant argues that ALJ Hamel's decision "fails to substantiate that any weight was given to the fact that the plaintiff has a long treatment history with Dr. Corso, a treating relationship with Dr. Moriarty, and a long history of prior neck and cervical conditions which should have been afforded weight as well," ALJ Hamel's RFC findings are consistent with Dr. Corso's opinion that Appellant had a 50% temporary impairment while noting that he had returned to work and did not affirmatively impose any restrictions on Appellant. AR. 307. Further, ALJ Hamel applied some weight to this opinion because it is conclusory. AR. 17. Given these considerations, the Court affirms ALJ Hamel's RFC determination in light of the medical records provided.

2.  Appellant Did Not Overcome his Burden of Proof to Require a Remand for a More Restrictive RFC Determination

A Social Security claimant ultimately bears the burden to prove a more restrictive RFC than the RFC assessed by the ALJ. Lesanti v. Comm'r of Soc. Sec., 436 F.Supp.3d 639, 650 (W.D.N.Y. 2020). Appellant argues that ALJ Hamel overlooked the vocational expert's testimony that no work exists in the national economy for an individual with the ability to perform light work but be off task or any amount of time greater than 10% and miss more than one day of work per month in conjunction with the belief that he could only use his hands occasionally during a workday. Appellant, however, cannot meet his burden and substantial evidence in the

administrative record likewise supports ALJ Hamel's RFC determination. For instance, Appellant does not cite to any particular treating physicians' opinions or objective medical evidence from the relevant period to demonstrate that a more restrictive RFC is necessary in light of the aforementioned hypothetical scenario presented to the vocational expert. In addition, Dr. Figueroa found during his consultative examination that Appellant had intact hand and finger dexterity, grip strength of 5/5 bilaterally, and the ability to button, zipper, and tie. AR. 494. Neither Dr. Corso nor Dr. Leppard found any manipulative abnormalities in their respective examinations of Appellant. AR. 341-42; 289-308. Lastly, while Appellant refers to Dr. Moriarty in this respect, these findings occurred after the relevant period do not warrant consideration as previously discussed.

   3.   ALJ Hamel Properly Incorporated Appellant's Hearing Testimony in his RFC
        Determination

To properly determine a claimant's RFC, a reviewing court must consider "the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988); see also Tricarico v. Colvin, 681 Fed.Appx. 98, 101 (2d Cir. 2017) (noting that an "ALJ's conclusion need not perfectly correspond to any one medical assessment as long as it is supported by the record as a whole"). Such evidence includes, *inter alia*, objective medical evidence, medical opinions, medical history, clinical findings, and the claimant's own assessment of limitations. 20 C.F.R. § 416.913 (a)(1)-(5). An ALJ may "exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." In particular, an ALJ has the authority to consider a claimant's daily activities as a factor relevant to his or her symptoms, such as pain. 20 CFR § 404.1529(c)(3)(i). See, e.g., Carvey v. Astrue, 380 Fed.Appx.50, 53 (2d Cir. 2010) (relying on the plaintiff's own account of his participation in various activities such as shopping, cooking, childcare, operating a lawnmower, and attending

school functions to affirm the ALJ's decision that the plaintiff possessed the RFC to perform sedentary work); Pardee v. Astrue, 631 F.Supp.2d 200, 211 (N.D.N.Y. 2009) (holding that substantial evidence existed to support the ALJ's decision regarding the plaintiff's RFC to perform light work since the plaintiff's testimony describing her ability to shower, dress, cook, grocery shop, and do homework supported the opinions of the plaintiff's treating orthopedic surgeon regarding her ability to work); Koch v. Colvin, 570 Fed.Appx.99, 102 (2d Cir. 2014) (rejecting the plaintiff's argument that the ALJ misstated the record when finding that he retained the RFC to perform sedentary work by partly considering the plaintiff's testimony that he could lift 10 pounds frequently, bend at the waist and knees, and grocery shop with her husband).

ALJ Hamel acknowledged that Appellant suffered from physical limitations due to his cervical disc impairments and determined that his capacity to work is restricted to conduct that does not involve constant handling, fingering, or reaching, climbing ladders or working in hazardous environments or around dangerous machinery, and involving only occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling. AR. 18. He noted, however, that "total disability is not supported by the objective evidence." AR. 18. ALJ Hamel incorporated Appellant's testimony during the September 7, 2018 hearing to conclude that Appellant is able to "care for his personal needs, prepare light meals and make his bed … does dishes, laundry, minimal housework, drives a car, grocery shops … fishes, does computer dating and he socializes with friends and family regularly." Id. Thus, ALJ Hamel properly assessed the entire administrative record to determine Appellant's RFC.

### 4.  ALJ Hamel Did Not Err in Disregarding the May 29, 2018 MRI of Appellant's Cervical Spine

When a claimant does not show that a currently existing condition rendered her disabled prior to her date last insured, benefits must be denied. Mauro v. Berryhill, 270 F.Supp.3d 754, 762

(S.D.N.Y. 2017). See, e.g., Vilardi v. Astrue, 447 Fed.Appx. 271, No. 10-5097-cv, 2012 WL 48345, at *1 (2d Cir. 2012) (holding that the claimant's reliance on evidence demonstrating a worsening of her condition after the date on which she was last insured was of "little value" to counter the substantial evidence the ALJ relied on to determine that she retained the RFC to perform her past relevant work); Flanigan v. Colvin, 21 F.Supp.3d 285, 302 (S.D.N.Y. 2014) (affirming the ALJ's decision to deny the claimant's request for disability benefits because the ALJ found that the medical record was absent objective findings or evidence of treatment prior to the date on which she was last insured or within a period of substantial proximity to her date last insured); Behling v. Com'r of Social Sec., 369 Fed.Appx.292, 294 (2d Cir. 2010) (rejecting the claimant's request for the court to consider her current condition because she "was required to demonstrate that she was disabled as of the date on which she was last insured" and "[a]ny new impairments are not relevant").

Appellant focuses on the Dr. Moriarty's evaluation of his May 29, 2018 MRI of the cervical spine to demonstrate that ALJ Hamel abused his discretion in reviewing the administrative record to formulate his RFC findings. ALJ Hamel, however, need not have considered this MRI because the developments in Appellant's cervical spine that are outlined in this report occurred approximately two years after the relevant insured period. The MRI revealed that Appellant suffered from degenerative disc disease with moderate central canal stenosis with cord compression at C5-C6 and C6-C7. AR. 560. Further, there was cord signal abnormality noted at the C6-C7 level, which indicated myelomalacia from chronic compressive myelopathy and multilevel foraminal stenosis with impingement of the bilateral exiting C5, C6, and C7 nerve roots. Id. "[N]o matter how disabled a claimant is at the time of his application or hearing, he is only entitled to the benefits of the Act if he is able to prove disability existed prior to his date last

insured." <u>King v. Colvin</u>, 14-CV-829S, 2016 WL 1165309, at *3 (W.D.N.Y. March 25, 2016); <u>see also</u> <u>Arnone v. Bowen</u>, 882 F.3d 34, 38 (2d Cir. 1989) (holding that "regardless of the seriousness of [a claimant's] present disability, unless [the claimant] became disabled before [the date last insured], he cannot be entitled to benefits]"). ALJ Hamel had accounted for Appellant's cervical spine impairment in his RFC assessment, and noted that is cervical disc disease with radiculitis constituted a severe impairment that "significantly limits the ability to perform basic work activities as required by SSRs 85-28 and 96-3p." AR. 13. ALJ Hamel further noted that "the record does not contain any medical information with evidence of signs or laboratory studies establishing a medically determinable impairment that would have interfered wit his ability to perform basic work activities at any time *relevant to the period in question*." <u>Id</u>. (emphasis added).

ALJ Hamel had the discretion to accord no weight to the May 29, 2018 MRI in his assessment of the other medical evidence laboratory studies in the record since the relevant period ended on March 31, 2016. While recognizing that Appellant's cervical disc disease limits him to work involving lifting twenty pounds occasionally and ten pounds frequently, ALJ Hamel noted that he accorded no evidentiary weight to the August 27, 2018 questionnaires completed by Dr. Moriarty that indicated severe limitations to Appellant's ability to work because such evidence was "more than two years after claimant's date last insured." AR. 17. Thus, the Court affirms ALJ Hamel's assessment of Appellant's ability to work within the relevant period.

5.  <u>ALJ Hamel Did Not Have a Duty to Develop the Administrative Record Since There Were No Gaps in the Administrative Record When Making his RFC Determination</u>

In a Social Security benefits proceeding, an ALJ has an "affirmative duty to develop the record where there are deficiencies and clear gaps in the administrative record." <u>Booker v. Saul</u>, 18-CV-857 (JMA), 2020 WL 8815409, at *1 (E.D.N.Y. May 31, 2020) (internal quotes omitted). However, "the flip-side of this same proposition" is that "where there are no obvious

gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotations omitted); see also Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) (affirming the Secretary of Health and Human Service's decision of no disability where "the ALJ had before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability").

Though Plaintiff argues that the ALJ should have taken affirmative steps to confirm with Dr. Figueroa whether the consultative examination report was complete (P. Br. at 20), the ALJ already had a complete medical history and did not need to obtain additional evidence. Dr. Figueora conducted an orthopedic consultative examination of Appellant on September 6, 2016. Although Dr. Figueora did not provide a specific assessment of Appellant's limitations, her findings are supported by other medical evidence in the administrative record, such as the opinions of Dr. Leppard and Dr. Corso. Moreover, as ALJ Hamel noted, Dr. Figueroa's examination occurred after the date last insured. AR. 17. Even if ALJ Hamel were to have taken affirmative steps to develop these records, the completion of Dr. Figueora's report would not have an obvious gap in the administrative record since the examination took place after the relevant period. Thus, ALJ Hamel did not have a duty to develop the record in this respect.

<u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings, appearing as Docket Entry No. 14 herein, is granted; Appellant's motion for judgment on the pleadings, appearing as Docket Entry No. 8 herein, is denied; and the October 18, 2018 Decision by the ALJ is affirmed.

Dated: October 5, 2021
Central Islip, New York

/s/ Anne Y. Shields
Anne Y. Shields